SAMUEL PRINCE & another *vs.* EQUITABLE SAFETY INSURANCE COMPANY.

Under a policy of insurance on a vessel, which provides that the insurers " shall not be liable for any loss or expense in replacing the copper now on the bottom of said vessel or any part thereof, should the same be removed from any cause whatever, but shall be liable for the loss and expense that may happen after she shall have been new coppered," if the vessel is so damaged by perils insured against as to make it necessary, in order to render her seaworthy, to put on her a different kind of bottom, the expense of such bottom is to be included in computing a constructive total loss.

ACTION OF CONTRACT on a policy of insurance upon the barque John Murray, for the term of one year from January 20th 1856, in the usual printed form, but containing this clause in writing : " It is agreed that the company shall not be liable for any loss or expense in replacing the copper now on the bottom of said vessel, or any part thereof, should the same be removed from any cause whatever, but this company shall be liable for the loss and expense that may happen to the copper after she shall have been new coppered." Trial before *Bigelow*, J., who reported for the decision of the full court the following case :

" In February 1856 the vessel sailed from Buenos Ayres for England, and after sailing encountered bad weather, sprung a leak, put back, was surveyed, condemned and sold. The defendants admitted that if the expense of coppering the bottom of the vessel was included in the repairs, the amount thereof would be sufficient to make a constructive total loss. There was evidence to show that if the vessel had been repaired and had not been recoppered, she would have required a brimstone bottom to make her seaworthy, which would have cost about half the price of copper. The defendants contended that by reason of the clause in the policy no expense of this kind could be included in the repairs. In relation to this, the jury were instructed to exclude the cost of recoppering, but if it was necessary in order to refit the vessel to repair her bottom, and in order to make her seaworthy a brimstone bottom was necessary, the cost of it would be properly included in the estimate. The jury found for a total loss, and, upon inquiry, said that they had considered a brimstone bottom necessary to render the vessel seaworthy, if the vessel was repaired and not recoppered, and considered the cost of it in determining whether the expenses of repairs would exceed half the sum insured."

*A. H. Fiske,* for the defendants.

*F. C. Loring,* for the plaintiffs.

BIGELOW, J. The construction given at the trial to the clause in the policy concerning the liability of the insurers for the cost of recoppering was sufficiently favorable to the defendants. The stipulation is a special one, inserted in writing, and is designed to restrict and diminish the general liability of the defendants under the ordinary form of policy. It is therefore to be construed most strongly against them. The extent of the exception to the risk assumed by the underwriters is, that they should not be liable for a new suit of copper, although the one on the vessel at the commencement of the risk should be destroyed by the perils insured against. But they did not stipulate that they should not be responsible for other repairs rendered necessary on the bottom of the vessel by sea damage. The construction for which the defendants contend would change the stipulation into

an agreement or warranty by the plaintiffs that the vessel was to be recoppered at their expense, or otherwise made seaworthy in her bottom, in the event that it should become necessary by reason of the perils of the sea to remove the old copper during the voyage insured.   But no such burden was assumed by the insured.   Their warranty was only that the vessel was seaworthy at the commencement of the risk.   They did not agree to keep her so during the voyage insured, either in her bottom or elsewhere, in case she should be injured by the perils insured against. Nor did the defendants exempt themselves from liability for such injuries any further than to except from the risk the cost of re-coppering the bottom of the vessel.   The object of this exception is manifest.   Copper is an expensive material.   It is always difficult to ascertain with any approach to certainty the exact condition of a suit of copper already on a vessel partly worn, or to estimate the length of time it will resist the action of the perils of the sea.   A liability so uncertain and indefinite the underwriters are unwilling to assume, and the purpose of the special clause in question is to except it from the risk.   The effect of the stipulation is to relieve the underwriters from a claim by the owners to replace this specific material on the vessel in case of its injury or destruction by a peril of the sea.   But it does not extend further, so as to exempt them from a liability for the cost of other materials or repairs which by stress of wind and weather may become necessary to render the vessel seaworthy.   If therefore the vessel is not newly coppered, no case arises for the application of this special stipulation.   It by no means follows, because the insurers are not to be liable for new copper, that they are also to be exempted from a liability for the cost of other needful repairs done to the bottom of the vessel.   The fallacy of the argument urged by the defendants consists in supposing that the stipulation excludes not only the risk of a loss of the copper, but also the damage which may ensue in case it becomes necessary by reason of sea perils to remove the copper.   Such an interpretation would extend the language of the exception beyond its fair import.   It would not only exempt the insurers from " any loss or expense in replac-

ing the copper," which is the precise limit of the exception, but would also impose on the owners the cost of refitting the bottom of the vessel with other materials so as to render her seaworthy in case of damage by the perils insured against. It is a mistake to say that because the insurers did not take the risk of replacing the copper in case of its injury or destruction by sea damage, they were also exempted from all consequences which might ensue from its removal. The stipulation in the policy contains no words from which such an inference can be fairly drawn. Nor can we engraft on the contract by implication an additional exemption of a risk not specified, merely because it would seem to be reasonable to include it within the exception which was actually inserted in the policy. It is the duty of courts to interpret contracts, not to make them for parties.

It is also urged in behalf of the defendants that if the exception is limited to its exact terms and held only to embrace the cost of replacing the copper on the vessel, the plaintiffs would have had it in their power to adopt some other metallic covering for the bottom of the vessel when the old copper was taken off, and to throw the cost of it upon the underwriters, which would be clearly contrary to the spirit if not the letter of the contract. We are inclined to think that a practical answer to this suggestion would be found in the fact that all the substances composed of metal which are used on ships' bottoms are comprehended under the generic term of "copper," as a word of art applied to the subject matter, or rather that the term "recoppering" signifies the putting on of any of the metallic plates usually used for the covering of bottoms of vessels. If so, then it is clear that the language of this exception would be broad enough to comprehend the use of all such materials. For example, a vessel whose bottom was covered with a composition of zinc and copper, known in commerce as "yellow metal," would be said to be "coppered." But however this may be, it is a sufficient legal answer to the argument, that the exception is in terms confined to replacing the copper, and does not extend to any substitute which may be used in its stead. If the parties intended to embrace other substances than copper within the exception of the

risks which were not assumed by the defendants, it should have been so expressed in the contract. We know of no rule of interpretation by which it can be extended beyond the limit fixed by the language adopted by the parties.

We are strongly inclined to the opinion that this special clause in the policy concerning the liability of the defendants for the cost of recoppering the vessel is not designed to have any effect when there is a constructive total loss and a consequent abandonment to the insurers; but that it is intended to apply only to cases where repairs are actually made and a claim arises for a partial loss. See *Lincoln* v. *Hope Ins. Co.* 8 Gray, 22. But it is unnecessary to express a decided opinion on this point, inasmuch as for the reasons already given we are all of opinion that the instructions given to the jury were right, and that the plaintiffs are entitled to               *Judgment on the verdict.*